IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:13-CV-210-BO

RELIASTAR LIFE INSURANCE COMPANY, )
)
    Plaintiff, )
)
v. )         **O R D E R**
)
JOHN B. LASCHKEWITSCH, )
)
    Defendant. )

This matter is before the Court on plaintiff's motion for summary judgment [DE 83], defendant's motion for summary judgment [DE 89], plaintiff's motion to exclude evidence and unsupported allegations [DE 101], defendant's motion to exclude evidence and unsupported allegations [DE 128], and defendant's motion to file documents under seal [DE 132]. All motions are ripe for consideration. For the following reasons, plaintiff's motion to exclude is GRANTED and defendant's motion to exclude is DENIED. Defendant's motion to file under seal is GRANTED IN PART and DENIED IN PART. Plaintiff's motion for summary judgment is GRANTED and defendant's motion for summary judgment is DENIED.

## BACKGROUND

ReliaStar Life Insurance Company ("ReliaStar") filed a complaint against defendant on March 22, 2013 which seeks a declaratory judgment that the life insurance policy it issued to defendant is null, void, and rescinded *ab initio* due to the allegedly fraudulent, willfully false, and/or material misrepresentations and omissions that defendant and the insured made in applying for the policy. The complaint also brings a claim for breach of contract and the duty of good faith and fair dealing, and a claim for fraud. On May 17, 2013, defendant filed an answer

and counterclaim seeking a declaratory judgment that the life insurance policy is valid, binding, incontestable, and fully payable to defendant. The counterclaim also brings a claim for breach of contract for failure to pay on the policy, a claim for unfair and deceptive trade practices, and a claim for punitive damages. On May 28, 2013, the Court granted Coy Brewer's motion to withdraw as defendant's attorney and defendant informed the Court that he would be proceeding *pro se* on June 5, 2013.

On February 14, 2014, plaintiff filed a motion for summary judgment. [DE 83]. On February 18, 2014, defendant filed a motion for summary judgment. [DE 89] On February 14, 2014, plaintiff filed a motion to exclude evidence and unsupported allegations made in defendant's supporting memorandum to his motion to dismiss. [DE 101]. On April 4, 2014, defendant filed a motion to exclude evidence and unsupported allegations in plaintiff's motion for summary judgment and reply [DE 128]. The filing of these two motions reveals the combative and ticky-tacky way in which this matter has been litigated. At nearly every turn, defendant has found reason to file generally meritless motions which waste this Court's time and resources. *See* [DE 100] (rejecting defendant's misleading and meritless motions). When not filing motions of his own, defendant's actions cause plaintiff to file motions to rectify defendant's unwillingness to comport with the Court's rules that facilitate orderly litigation. *See* [DE 77] (allowing leave for untimely subpoena to non-party due to defendant's failure to comply with Court orders and produce documents).

This case arises from a dispute over a life insurance policy covering the life of Ben Laschkewitsch. Ben is defendant's brother. Defendant was the agent who sold the policy to his brother and was paid a commission of $1,946.16 by ReliaStar for selling the policy. Ben applied for insurance through his brother on January 22, 2010 and the policy became active on February

22, 2010. Ben died on January 15, 2012. ReliaStar then denied the claim for payment on the policy on October 10, 2012 because of misrepresentations that had been made in the application. Defendant appealed ReliaStar's decision and ReliaStar responded to the appeal by filing this suit. The undisputed facts before this Court on the motions for summary judgment reveal defendant's scheme to profit off of the illness and death of his brother, for his sole personal gain, to the tune of $3.9 million. The facts reveal that defendant contrived to acquire $3.9 million in potential life insurance payouts on the life of his brother who was terminally ill with ALS. It is clear that defendant was aware that his brother was suffering from ALS at the time he helped his brother to apply for life insurance and that he made material misrepresentations to ReliaStar about both the health of his brother and the amount of in force or pending life insurance coverage with other companies. These misrepresentations caused ReliaStar to issue a policy to defendant's brother (the "insured") with defendant as the named beneficiary. The effects of these facts on the claims at issue in this case are discussed below.

## DISCUSSION

As an initial matter the Court notes that defendant's motion for summary judgment was filed late and the supporting memorandum is 60 pages long thereby exceeding the Court's rules limiting length of memoranda to 30 pages.[1] Defendant shows good cause for failing to timely file his motion for summary judgment. February 13, 2014 brought a snow and ice storm to the Raleigh, North Carolina area and non-essential travel was discouraged by state officials. Further, the Court closed early on February 13 and remained closed on Friday, February 14, 2014. Monday, February 17, 2014 was a national holiday and the Court remained closed. *Pro se* plaintiff is not a member of the electronic filing system the Court uses and can only mail or

---

[1] Plaintiff noted this fact in its memorandum in opposition to defendant's motion for summary judgment and defendant addressed the issue in his reply in support of his motion for summary judgment.

personally deliver his filings with the Court. Under the extreme weather circumstances surrounding the filing deadline, it is reasonable for defendant to have filed his motion for summary judgment the first day the Court was open for business after the filing deadline. However, defendant's only excuse for his overly lengthy memorandum is that he was unaware of the 30 page limit. This requirement is listed in the Local Rules available to the public through the Court's website. Local Rule 7.2(e) plainly states that "[m]emoranda in support of or in opposition to a motion [] shall not exceed thirty (30) pages in length excluding the certificate of service page, without prior court approval." Ignorance of the rules is no excuse, even for a *pro se* plaintiff. Accordingly, the Court does not considered any of defendant's arguments in the supporting memorandum for his motion for summary judgment following page 30 of that document.

I.     MOTIONS TO SEAL.

Local Rule 26.1(a)(1) requires that medical records not be open to inspection or copying by any persons except the parties and their attorneys. It further requires the filing of any such records to be accompanied by a motion to seal. Accordingly, defendant's motion to seal documents is granted to the extent the documents are medical records or discuss medical records. Defendant's memorandum in opposition to plaintiff's motion for summary judgment [DE 127] and the following medical documents [DE 131-1, 131-2, 131-3, and 131-4] are hereby sealed. However, the affidavits defendant wishes to be sealed are not medical documents and this Court sees no justification for sealing them.

Plaintiff has filed two motions that remain pending on the docket, but are not yet ripe. Plaintiff's motion [DE 137] alerts the Court to defendant's altering of medical records submitted to ReliaStar as part of Ben's application for life insurance and moves to supplement the record

4

with this evidence. The evidence of the alteration and subsequent fraud is strong and disturbing. However, as defendant will not have had the chance to respond to this motion, and the Court rules on the motions for summary judgment here, it is denied as moot. Plaintiff's motion [DE 139] is a motion to seal the motion to supplement evidence [DE 137] as it contains medical records of Ben Laschkewitsch. That motion is granted.

II.     MOTIONS TO EXCLUDE EVIDENCE.

Both plaintiff and defendant have filed motions to exclude evidence and unsupported allegations that they allege were present in supporting memorandums, responses and replies to the parties' motions for summary judgment.

A. Plaintiff's Motion.

ReliaStar objects to the affidavit of Jerry Dawson [DE 94-4], the affidavit of John M. Laschkewitsch [DE 94-1], the affidavit of Imelda Laschkewitsch [DE 94-2], the unverified report and supplemental report of Daryll Martin [DE 94-5, 94-6], and various unsupported and unverified allegations in defendant's brief in support of his motion for summary judgment including allegations concerning what Ben Laschkewitsch knew, believed, or was informed [DE 90], and asks that these documents be excluded from consideration on defendant's motion for summary judgment.

On April 14, 2014, this Court entered an order excluding defendant's expert witness, Daryll Martin because he is not qualified as an expert on underwriting and his opinion on waiver is unnecessary. [DE 130]. Accordingly, this Court will exclude from consideration the report and supplemental report of Daryll Martin [DE 94-5, 94-6].

ReliaStar asks the Court to exclude the affidavit of Jerry Dawson from consideration because Dawson is not a fact witness in the case and defendant is improperly attempting to use

5

the affidavit as expert evidence when Dawson was not designated as an expert witness. Plaintiff's reasoning for Dawson not being a designated expert – that Dawson did not want to be an expert – is of no consequence here. Further the fact that Dawson's affidavit contains restatements from the National ALS Association's website and not personal opinions is of no consequence. There are rules of evidence that guide parties in submitting evidence to the Court and those rules must be complied with. If defendant wanted the information in Dawson's affidavit to be considered by the Court, defendant should have designated Dawson an expert. This was not done, so the Court excludes the Dawson affidavit from consideration.

ReliaStar also asks the Court to exclude the affidavit of John Laschkewitsch Sr. because it was not produced in response to their request number 10 for production and in response to this Court's order specifically instructing defendant to produce the responsive documents [DE 43]. The affidavit is dated January 5, 2011 and the request was made on July 12, 2013. There is no excuse for defendant's failure to produce this document and his protest that his father asked him not to submit the affidavit until an address was corrected is completely inconsequential. Accordingly, the affidavit is properly excluded under FED. R. CIV. P. 37(b)(2)(A)(ii).

ReliaStar also asks the Court to exclude the affidavit of Imelda Laschkewitsch, Ben Laschkewitsch's widow because she essentially recanted the portions of her affidavit that defendant relies on. Defendant attempts to explain away Imelda's recantation, but her deposition testimony is clearly in conflict with her affidavit. As the deposition testimony occurred after the affidavit was signed, the inconsistencies should be read in favor of the deposition testimony. Accordingly, the Court excludes Imelda's affidavit from consideration.

Finally, ReliaStar asks the Court to exclude all of defendant's unsupported allegations concerning what the insured believed or was told by doctors as well as various other allegations

6

that are likewise unsupported by any proper summary judgment evidence. The Court will not consider any statements or arguments that are not supported by proper summary judgment evidence including all of the statements ReliaStar indicates in its response motion [DE 105].

B. Defendant's Motion.

Defendant also filed a motion to exclude evidence and unsupported allegations. [DE 128]. This is not defendant's first meritless motion before the Court. [*See* DE 100; 130; 136]. However, defendant persists in lodging meritless allegations and complaints at every turn. Here, defendant takes particular objection to plaintiff's arguments contained in its supporting memoranda surrounding the pending motions for summary judgment. None of defendant's objections have any merit at all save one. The Court notes that the proper amount of total life insurance coverage obtained for the life of Ben Laschkewitsch, as corrected by plaintiff in its response memorandum, is $3.9 million.

However, the Court denies defendant's motion in its entirety here. The Court is able to separate plaintiff's arguments and conclusions from the supporting documents and facts. Defendant offers no challenge to the summary judgment evidence relied upon by plaintiff that has merit. Where defendant attacks the evidence, his attacks have no merit as shown in plaintiff's response memorandum. Accordingly, defendant's motion is denied.

III. MOTIONS FOR SUMMARY JUDGMENT.

A motion for summary judgment cannot be granted unless there are no genuine issues of material fact for trial. FED. R. CIV. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party must demonstrate the lack of genuine issue of fact for trial and if that burden is met, the party opposing the motion must "go beyond the pleadings" and come forward with evidence of a genuine factual dispute. *Celotex*, 477 U.S. at 324. The Court must view the facts

and the inferences drawn from the facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). Conclusory allegations are insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.") (emphasis in original). )."[T]here must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. Therefore the inquiry asks whether reasonable jurors could find for the plaintiff by the preponderance of the evidence. *Id.* In order to defeat summary judgment, parties must provide "specific facts showing there is a genuine issue for trial." *Id.* at 249–50. The Court will not consider "unsupported assertions," or "self-serving opinions without objective corroboration." *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996).

A.    Plaintiff's Motion for Summary Judgment.

Plaintiff seeks summary judgment in its favor on all of its claims as well as on defendant's affirmative defenses and counterclaims. ReliaStar seeks a declaration that the life insurance policy it issued to Ben Laschkewitsch, defendant's brother, is void due to the material misrepresentations it alleges were made in the application and seeks to recover damages for defendant's breach of his producer agreement with ReliaStar. ReliaStar also seeks actual and exemplary damages due to defendant's allegedly blatant and intentional fraud. The facts in this case are lengthy and complicated and a recitation of them here is unnecessary as plaintiff's statement of the facts in its supporting memorandum is well-supported through extensive citation to the evidence before the Court. [DE 87 at 2–20]; *see also* [DE 114 at 4–9]. Accordingly the

8

Court adopts these recitations of the facts as a general delineation of what occurred in this matter.[2]

                i.          Declaratory judgment claim.

"Material misrepresentations in an application for an insurance policy may prevent recovery on the policy. *Luther v. Seawell*, 662 S.E.2d 1, 4 (N.C. App. 2008) (citing N.C. Gen. Stat. § 58-3-10). "[A] representation in an application for an insurance policy is deemed material if the knowledge or ignorance of it would naturally influence the judgment of the insurer in making the contract. . . ." *Goodwin v. Invests. Life Ins. Co. of N. Am.*, 419 S.E.2d 766, 769 (N.C. 1992) (quotation omitted). "[I]n an application for a life insurance policy, written questions and answers relating to health are deemed material as a matter of law." *Ward v. Durham Life Ins. Co.*, 381 S.E.2d 698, 702 (N.C. 1989); *see also Fountain & Herrington, Inc. v. Mut. Life Ins. Co. of N.Y.*, 55 F.2d 120, 123 (4th Cir. 1932) ("Answers made in response to questions in the application as to prior illness, consultation with physicians and applications for other insurance, where the applicant, as here, declares that they are true and offers them as an inducement to the issuance of the policy, are deemed material as a matter of law.") (citing *George Wash. Life Ins. Co. v. Am. Collapsible Box Co.*, 117 S.E. 785 (N.C. 1923)). "[I]t is well settled that a misrepresentation of a material fact, or the suppression thereof, in an application for insurance, will avoid the policy even though the assured be innocent of fraud or an intention to deceive or to wrongfully induce the assurer to act, or whether the statement be made in ignorance or good faith, or unintentionally." *Tharrington v. Sturdivant Life Ins. Co.*, 443 S.E.2d 797, 801 (N.C. App. 1994) (quotation omitted).

---

[2] The Court explicitly does not accept as fact any unsupported statements, opinions, and theories made by plaintiff. *See e.g.* [DE 87 at 12] (conjecturing that Dr. Van Tran did not examine Ben, but instead examined defendant).

Here the undisputed evidence clearly supports a finding that the application for insurance misrepresented the insured's health. The evidence shows that the insured was diagnosed with ALS and frontotemporal dementia in August 2009, an MRI done at that time showed brain atrophy, and he had already been suffering various symptoms for several months. The VA records show the same diagnosis and a continued decline so that by January 8, 2010, the insured could not count backwards from 10. The insured was not in the dark about his health and disclosed to the North American health examiner on September 15, 2009, that he was diagnosed the prior month with ALS. Moreover, that same month a medical evaluation ordered by the insured's employer recorded his dementia and mental decline. His condition was so severe that he was no longer able to work and, on October 8, 2009, Ben Laschkewitsch was terminated because of his inability to do his job as a result of his ALS. His treating physicians and healthcare providers at the VA hospital were obviously aware of his poor condition.

Despite this medical history, the insured answered "no" in response to the following questions in the Mutual of Omaha "statements to examiner" on September 22, 2009 that was submitted as part of the application to ReliaStar:

> 2. Within the last 10 years, have you been treated for or had any known indication of: . . . (b) Paralysis or stroke, mental, nervous or emotional disorder; chronic fatigue syndrome; dizziness or fainting; convulsions or frequent headaches?
> 3. Are you now under observation or taking treatment?
> 5. Other than above, have you within the past five years: (a) Had any mental or physical disorder not listed above? . . . (c) Been a patient in a hospital, clinic, sanatorium or other medical facility?

[DE 84-5]. In response to question 5(d) of the same form ("Had electrocardiogram, X-ray or other diagnostic test?"), the insured answered yes, but only identified a "routine exam" with Dr. Meltzer, whose records do not give any indication of ALS or any other serious problems. [*Id.*]. The insured did not make mention of the MRI nor spinal tap performed on him less than a month

10

before. The response provided to the medical transfer statement portion of the ReliaStar application affirmed that the information in the Mutual of Omaha form was accurate as of January 22, 2010. [DE 84-6 at 171]. The March 15, 2010 application amendment confirmed no changes in health and no new doctor visits or medications since January 22, 2010. [DE 84-6 at 275].

These responses to the health questions in the application to ReliaStar are indisputably false and are material as a matter of law. *Ward*, 381 S.E.2d at 702. Further, the underwriter who issued the initial policy testified that had she been provided the information about ALS and dementia with the application it would have been declined. [DE 86-4 at 10–15]. Similarly, ReliaStar's chief underwriter reviewed the application and medical records and testified that had the medical history been disclosed in response to the questions in the Mutual of Omaha form or the March 15, 2010 amendment, the application would have been declined. [DE 86-5]. This evidence alone is sufficient to establish that the policy is void, however, ReliaStar is able to offer additional evidence supporting its claim for a declaratory judgment that the policy is void.

Page 3 of the ReliaStar application asked "Do you have an existing or pending life insurance policy or annuity contract? (*If "yes", provide details below. . . .*)." [DE 84-6]. Insured answered yes, but only identified a $100,000 policy from American Heritage as his other existing or pending life insurance policy. The undisputed facts in this case reveal that as of the date of the application to ReliaStar, Genworth and Transamerica had issued policies totaling $950,000 and there was a pending application to Banner Life for $900,000. Based on his disclosed income and net worth, the insured would have only been entitled to no more than a total of $900,000 to $1 million in coverage from all carriers under ReliaStar's guidelines. [DE 86-5]. Had ReliaStar been told about the other existing and pending coverage, it would have declined the application [DE

11

86-4; 86-5]. Therefore these facts are material and entitle ReliaStar to summary judgment on its claim for declaratory relief.

Defendant responds to the aforementioned evidence by arguing that ReliaStar is not entitled to summary judgment, not because any of the above evidence is disputed, but rather because ReliaStar is alleged to have waived its objections to the deficiencies in the application and because defendant argues that the policy has passed its contractual limit of contestability and that it is not contestable. Defendant also argues that ReliaStar should not prevail on its claims against defendant based on the theory of unjust enrichment. Finally, defendant argues that ReliaStar should be estopped from prevailing on its declaratory judgment claim under a quasi-estoppel theory.

a.    Contestability.

The contestability clause is found in a policy endorsement and reads in relevant part:

> After your Policy has been in force during the lifetime of the Insured for two years from the Issue Date, we will not contest its validity except for nonpayment of premiums . . . . Notwithstanding the above, we may contest your Policy at any time if it was procured by fraud, as permitted by the applicable laws of the state in which your Policy is delivered.

[DE 83-2 at 47]. Here, the policy's issue date was February 22, 2010, and the insured died on January 15, 2012. Because the insured died within two years of the issue date of the policy, the policy was not in force for two years during the lifetime of the insured and thus ReliaStar has the right to contest it.

Defendant argues that ReliaStar was required to file suit within the 2-year period, but that is not what the contestability clause nor North Carolina law requires. *See e.g. Dignity Viatical Settlement Partners v. Cedalion Sys., Inc.*, 4 F. Supp. 2d 466, 470–71 (W.D.N.C. 1998) (finding a similar contestability clause to not bar suit when coverage at issue was obtained on February 1,

1992, the insured died on December 12, 1993, and the suit contesting the policy was filed on February 28, 1997).

Finally, defendant argues that the contestability clause is ambiguous, but the Court finds that the language is unambiguous. "A contract that is plain and unambiguous on its face will be interpreted by the court as a matter of law." *Schenkel & Schultz, Inc. v. Hermon F. Fox & Assocs., P.C.*, 658 S.E.2d 918, 921 (N.C. 2008). "An ambiguity exists in a contract when either the meaning of the words or the effect of provisions is uncertain or capable of several reasonable interpretations." *Id.* Here, the only reasonable interpretation of the contestability clause is that the insured must live for two years with the policy in force before it becomes incontestable. Therefore, the clause is not ambiguous. Here, the insured died within two years of the policy being obtained and therefore ReliaStar is able to contest the policy per the policy's terms.

### b. Waiver.

"Waiver in insurance law is the intentional relinquishment of a known right." *Akzona, Inc. v. Am. Credit Indem. Co. of N.Y.*, 322 S.E.2d 623, 628 (N.C. App. 1984) (quotation omitted). Waiver requires "knowledge on the part of the insurer of pertinent facts and conduct thereafter inconsistent with an intent to enforce the condition." *Id.* (quotation omitted). "Under North Carolina law, an insurer is under no duty, legal or equitable, to question the truth of the applicant's statements or, absent facts sufficient to put it on inquiry, to conduct an investigation to determine the truth or falsity thereof. *Evanston Ins. Co. v. G&T Fabricators, Inc.*, 740 F. Supp. 2d 731, 737 (E.D.N.C. 2010) (quotation omitted). "[T]he critical factor upon which a duty of further inquiry must be based is not simply the means to inquire, but the existence of a reason for doing so." *Rutherford v. John Hancock Mut. Life Ins. Co.*, 562 F.2d 290, 293–94 (4th Cir. 1977).

Here, ReliaStar, on several occasions, was placed on inquiry notice of fraud, but each time, defendant sufficiently covered his tracks so as to stop the inquiry at an early stage where, if ReliaStar had pursued it further, fraud would have been discovered. When Imelda Laschkewitsch called ReliaStar and asserted that Ben had ALS, ReliaStar investigated that call, reviewed the underwriting file again, and ordered updated medical records from the only two doctors listed in the application as treating doctors. If all of the insured's doctors' records had been requested and reviewed, ReliaStar would have discovered the fraud at that time. Because it was provided with incorrect information and trusted the statements made by defendant, it ended the inquiry there.

When ReliaStar saw MIB 200 codes, which are catchalls for neurological issues, it turned to the letter defendant had provided with the application for insurance. That letter explained away past neurological concerns and pointed to Dr. Van Tran's report which gave the insured a clean bill of health. ReliaStar ended its inquiry into the 200 codes after relying on defendant's misrepresentations contained in the letter. It was under no obligation to dig deeper in order to avoid waiver. Defendant attempts to argue that ReliaStar waived its ability to contest the claim because it believed the lies that defendant fed it. This amounts to an absurd argument in favor of finding waiver which, if the Court were to do as defendant asked, would end in an unjust result. The Court declines to do so.

The remainder of defendant's waiver claims are entirely meritless and the Court declines to discuss them because plaintiff is entitled to summary judgment on an issue defendant does not argue is waived. The policy at issue is subject to rescission not only because of the insured's undisclosed health issues, but also because of the failure to disclose the other existing and pending coverage on insured's life. Defendant has not argued waiver on this issue. ReliaStar has established that the undisclosed policies were material to the underwriting of the risk and

14

issuance of the policy at issue, and therefore ReliaStar is entitled to rescind the policy separate and apart from the undisclosed health issues. Accordingly, defendant's waiver arguments fail and plaintiff is entitled to summary judgment on the issue.

### c. Unjust enrichment.

The only benefit that defendant conferred on ReliaStar was the payment of premiums, all of which were reimbursed to him. To the extent he complains about "earned interest" not being reimbursed, the evidence shows that all payments were reimbursed in 2012. The earned interest on these payments is easily exceeded by the $1,946.16 defendant received in commissions as the agent and has retained until this time. The facts show, simply, that no unjust enrichment has occurred here. Accordingly summary judgment in favor of plaintiff on the issue is granted.

### d. Estoppel.

Quasi-estoppel only applies where a party having the right to accept or reject a transaction "takes and retains benefits thereunder," in which case he "ratifies it, and cannot avoid its obligation or effect by taking a position inconsistent with it. *Carolina Medicorp, Inc. v. Bd. of Trustees of the State of N.C. Teachers' and State Employees' Comprehensive Major Med. Plan,* 456 S.E.2d 116, 120 (N.C. App. 1995). Defendant argues that ReliaStar is estopped from challenging the policy because it retained premiums paid after the insured died. However, the evidence shows that while ReliaStar did accept and deposit premium checks received after the insured's death, it later reimbursed those amounts by a check issued on May 29, 2012 and another issued on July 19, 2012. [DE 86-2 ¶ 3]. After the claim investigation was completed and the claim denied, ReliaStar further reimbursed all of the premiums paid while the policy was in force. *[Id.]*.

Defendant also argues estoppel based on ReliaStar's alleged "bad faith" post-claim underwriting. He generally complains that it took too long for ReliaStar to obtain and review the medical record from the doctors that were not disclosed in the application. Defendant cannot point to any evidence that the amount of time under the circumstances was unreasonable. Further, if he had disclosed all of the doctors initially in the application, there would be no claim at all as ReliaStar would have denied the application. Accordingly, defendant's estoppel claims are rejected by the Court.

ii. Breach of contract claim.

"The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill*, 530 S.E.2d 838, 843 (N.C. 2000). "In order for a breach of contract to be actionable it must be a material breach, one that substantially defeats the purpose of the agreement or goes to the very heart of the agreement, or can be characterized as a substantial failure to perform." *Long v. Long*, 588 S.E.2d 1, 4 (N.C. App. 2003). Here, ReliaStar alleges that defendant breached paragraph III(C)(6) of his producer contract in which defendant agreed not to "[d]eliver a Contract if, after reasonable inquiry, Producer is aware that the true facts as to the health, habits, occupation or other factors pertinent to the insurability of the proposed insured are not then as represented in the Application for such Contract." [DE 83-6 ¶ III(C)(6)]. As a result of that breach, ReliaStar argues that it is entitled to recover its damages and costs including attorney fees pursuant to the contract. [DE 83-6 ¶ VI(C)].

Here the evidence clearly shows that defendant breached paragraph III(C)(6) because he knew facts not disclosed to ReliaStar that were pertinent to the insurability of Ben Laschkewitsch. Defendant had knowledge that prior applications of Ben's were denied because

of his ALS diagnosis. Defendant also knew that he was applying for much more coverage from various insurance companies than the $900,000 he represented to ReliaStar. Defendant's arguments that he did not actually know of the reasons for denial and that the other applications he submitted for Ben with other insurance companies had not yet been approved are disingenuous and are contrary to the evidence before the Court. Accordingly, ReliaStar is entitled to summary judgment on its breach of contract claim and is entitled to recover its damages (the commission paid to defendant for the Ben Laschkewitsch insurance policy) as well as its costs from defendant.

ReliaStar has also requested reasonable attorney's fees, however, under North Carolina law, "a successful litigant may not recover attorney's fees, whether as costs or as an item of damages, unless such a recovery is expressly authorized by statute." *Silicon Knights, Inc. v. Epic Games, Inc.*, 917 F. Supp. 2d 503, 516 (E.D.N.C. 2012) (quoting *Stillwell Enter. v. Interstate Equip. Co.*, 266 S.E.2d 812, 814 (N.C. 1980). "A contractual provision obligating one party to pay another party's attorney's fees is not enforceable absent a statutory basis for an award of attorney's fees." *Id.* Here plaintiff points to the contract, but has not pointed to any statute authorizing attorney's fees. Due to the circumstances of this case and defendant's fraudulent actions, the Court will allow plaintiff to further brief the issue.

      iii.    Fraud claim.

The elements of fraud are: (1) a false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) that did in fact deceive, and (5) resulted in damage to the injured party. *Forbis v. Neal*, 649 S.E.2d 382, 387 (N.C. 2007). Here, the evidence clearly shows that defendant made material and intentional misrepresentations concerning insured's health and existing and pending insurance. The

17

evidence also shows that ReliaStar relied on the misrepresentations by issuing the policy which injured ReliaStar to the extent of the commissions paid to defendant and its legal expenses and costs of this litigation. The facts show that defendant had actual awareness of the insured's diagnosis of ALS because of the denial of the application by North American and the subsequent notices from the general agent. The facts further show that defendant engaged in a pattern of misrepresenting to various insurers, including ReliaStar, that the only existing coverage was the $100,000 American Heritage policy. As the writing agent on every application, and as the (proposed) owner of most of the policies and applications, defendant knew this information was false. Further, he submitted the false information in hopes of obtaining insurance policies and payouts on the life of his brother who he knew to be terminally ill. No reasonable juror could determine otherwise from the facts and evidence in the record. Accordingly, ReliaStar is granted summary judgment on its fraud claim.

B.     Defendant's Motion for Summary Judgment.

The Court will only discuss defendant's counterclaim for unfair and deceptive trade practices here. The Court has already ruled in favor of plaintiff on defendant's counterclaims for declaratory judgment and breach of contract and has ruled in favor of plaintiff on all of defendant's affirmative defenses. Defendant's counterclaim for unfair and deceptive trade practices is the final remaining issue to be discussed.

Defendant moves for summary judgment on ReliaStar's alleged violation of N.C. Gen. Stat. § 75-1.1, which prohibits unfair and deceptive acts or practices. Defendant alleges that ReliaStar committed acts which fit the definitions provided in N.C. Gen. Stat. § 58-63-15(11) which defines unfair practices in the settlement of insurance claims. Although § 58-63-15(11) does not create a private right of action, the North Carolina Supreme Court has held that actions

18

Case 5:13-cv-00210-BO   Document 141   Filed 05/28/14   Page 18 of 21

which violate this section can support liability under § 75-1.1. *Gray v. N.C. Ins. Underwriting Ass'n*, 529 S.E.2d 676, 682–83 (N.C. 2000).

Section 58-63-15(11)(h) prohibits "[a]ttempting to settle a[n insurance] claim for less than the amount to which a reasonable man would have believed he was entitled." Defendant argues that ReliaStar breached this section by its counsel extending a confidential offer to resolve this lawsuit. The email at issue which contained the caption "Confidential Settlement Communication" is inadmissible under Federal Rule of Evidence 408. Accordingly defendant can point to no admissible evidence which supports his claim and summary judgment in favor of defendant on the issue is denied and summary judgment is granted in favor of plaintiff.

Section 58-63-15(11)(i) prohibits "[a]ttempting to settle claims on the basis of an application which was altered without notice to, or knowledge or consent of, the insured." Defendant here argues that Jackie Brantley allegedly dated his application without his consent. However, ReliaStar has demonstrated that this allegation is without merit as defendant had notice that she dated the application because he was asked to provide and did provide a signature page that he personally dated January 22, 2010 to be submitted and subsequently affirmed the date when he executed the delivery amendment. Accordingly summary judgment in favor of defendant on the issue is denied and summary judgment is granted in favor of plaintiff.

Section 58-63-15(11)(b) prohibits "(f)ailing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies." Here defendant argues that plaintiff violated this section by failing to respond to his "legal appeal." ReliaStar's response to his appeal was this lawsuit. That the lawsuit was not filed within 60 days of defendant's submission of his appeal caused him no injury as the claim had already been denied and as he is not entitled to any recovery under the policy. *See Johnson v. First Union corp.*, 496

19

S.E.2d 1, 6 (N.C. App. 1998) (unfair claim settlement practice action requires "proximately caused actual injury to the plaintiff"). Accordingly summary judgment in favor of defendant on the issue is denied and summary judgment is granted in favor of plaintiff.

Section 58-63-15(11)(n) prohibits "(f)ailing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement." Defendant argues that ReliaStar violated this provision because the October 10, 2012 claim denial letter "failed to allege misrepresentation of a single application question contained within or attached to the policy." However, a review of the actual denial letter reveals that this claim has no merit. [*See* DE 86-3]. The denial letter is four pages long and summarizes ReliaStar's findings based on a review of the medical records and lists six questions from the Mutual of Omaha paramedical exam form to which the insured answered "no." The letter concludes:

> As outlined in this letter, we found several significant omissions and misrepresentations of the Insured's health history, including physician consultations, treatment, and prescribed medications. These omissions and misrepresentations were material . . . had we known of the Insured's non-disclosed medical consultations at the VA Medical Center for symptoms of ALS and dementia . . . we would not have issued coverage on any basis.

[*Id.*]. Accordingly summary judgment in favor of defendant on the issue is denied and summary judgment is granted in favor of plaintiff.

## CONCLUSION

For the foregoing reasons, the plaintiff's motion to exclude is GRANTED and defendant's motion to exclude is DENIED. Defendant's motion to seal is GRANTED IN PART and DENIED IN PART. Plaintiff's motion to supplement evidence is DENIED AS MOOT. Plaintiff's motion to seal is GRANTED. Defendant's motion for summary judgment is DENIED. Plaintiff's motion for summary judgment is GRANTED in its entirety. The Court hereby

DECLARES and ADJUDGES that the policy at issue bearing policy number AD20260690 is null, void, and rescinded *ab intitio* due to the fraudulent, willfully false, and material misrepresentations and omissions that defendant and insured made in applying for the policy. Plaintiff is AWARDED costs taxed against defendant. Further plaintiff is AWARDED $1,946.16 in damages and all post-judgment interest recoverable by law. The Clerk is DIRECTED to enter judgment accordingly. Plaintiff is ORDERED to brief the Court on the matter of costs and reasonable attorney's fees.

SO ORDERED.

This the **23** day of May, 2014.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE